We're ready when you are, Mr. Lipscomb. Good morning. Good morning. This case presents two issues, both associated with statute of limitations for a claim against a write-your-own-character national flood insurance program. Okay. If you would speak a little more loudly and speak a little more slowly, that would help me. Thank you, Your Honor. I'm in a bad habit of that. I appreciate it. The first issue, the issue that was originally briefed, was what's the accrual date for a claim against a WYO carry? We believe that... Why don't we go to the subject of our asking for letter briefs on whether it's immaterial whether the first letter counted or the second letter counted, because it's undisputed that if we just go by the one year for filing in federal court, neither letter falls within that one year. And you filed a brief that went into a lot of detail and was helpful to us, though I will say that the font you filed was mighty, mighty small. I don't... That must be the super small footnote font where you want to hide something. And I encourage you to use a larger font in the future. I mean, obviously we were able to adjust and adapt, but it was almost unreadable. But we got it and I read it. And this is my question for you. You seem to be urging that because the other side didn't raise this, they waived this point of original and exclusive federal jurisdiction and you must file in federal court within one year. Am I fairly stating your contention that it's waived by them? Yes, Your Honor. Well, what if it is a jurisdictional question instead of a limitations question that can never be waived? And what do you read into the use of both original and exclusive in this 4072? You know, we give meaning to each word in a statute, and it was original and exclusive. I'd like to apologize for the font. Oh, that's all right. I just want to help you with your future. With regard to the jurisdictional question, we get a brief like that or a question from the court like that. It's the type of things that can keep you up at night. And we thought and we looked hard at it, and I think the issue comes down to there's a under 42 CFR 4072, the exclusive and original jurisdiction against the FEMA administrator or federal jurisdiction in general because it presents a federal question under 28 U.S.C. 1331. And we look at 42 4072. It specifically names the administrator. And then when you go to the regulations, it in fact says that when you have a WYO carrier, the federal government and the administrator are not proper parties to the lawsuit by definition and cannot be held liable. Now, there's a body of case law. It does come from the federal registry through a couple of steps and through reimbursements. But there is no direct cause of action in this case. Moreover, for us. I mean, if you were to prevail in this case, where would the money come to pay your client? It originally comes from and the check would be issued by National Lloyd's. Now, they do get reimbursed for it, and that's how it invokes the federal question jurisdiction because the U.S. Treasury funds are implicated through the reimbursement program. But how does it make any sense to say they're not really a party? And it's for this reason. I look at the reason with Danica. It's a privy? It goes beyond that. What 4072 is doing is a waiver of sovereign immunity. So you're saying this is a government actor. The king cannot be sued. But it can be sued exclusively in federal district court under these exclusions. In contrast, in the way Downey presents it, is the quote here. Make sure I get it right. We cannot look past the caption and pretend the director is actually a defendant in the lawsuit. And unfortunately, that's what some courts have done. There is no doubt National Lloyd's is still a private entity. Now, as a private entity, it's entitled to protections through preemption, but not through sovereign immunity. And the easiest way to show where that comes into play is this court's opinions, like, for example, in Camp and Marseilles. This court has gone out and specifically stated, for these specific tasks, a write-your-own-character and the adjustment of the claim, those state law claims are preempted. In contrast, if a WYO carrier does something wrong in the procurement process, the sale of the policy, in those circumstances, state law claims are not preempted. If they are truly the sovereigns, they would always have immunity, unless there's a waiver of it in some way or form. How do we get around the fact that we have cases that say original and exclusive in YWOs? Even if that wasn't at issue, those are cases that we have. Aren't we required to follow them? And I think that's where the split is. So you have the Seventh Circuit. That's the Downey case. No, I mean we, the Fifth Circuit, not we, the world. And I think in that context, I think that's just a little bit, unfortunately, of loose language. And we're guilty of the same thing. When we did our original briefing on this topic, we're talking about 4072 as well at times. And I think the key part of that is the actual part that applies to WYO carriers is actually 44 CFR Part 61. And that provision has slightly different language. It talks about the carrier itself. Well, how can a CFR trump the statute? It doesn't really trump it as much as it's what actually applies. Whereas 4072 applies only to the administrator, there is a specific policy provision, the CFR that's incorporated, that's part of the policy language. That language creates, again, a one-year statute of limitations, requires it to be filed in federal court. But the key difference to it is it doesn't create original exclusive jurisdiction. And, in fact, that specific language is left out of the part in the policy. The CFR does not contain the same clause that's in 4072. And it goes even further. Although it doesn't need it, 4072 says without regard to amount in controversy. So in any circumstance, you always have to go to federal court. Once again, that's not contained in the CFR provision. So where the difference becomes is 4072, a waiver of sovereign immunity against the king, strictly complied with, has to be done in federal court. If you don't file there first, you're in trouble. As a policy provision only, that's required to be in the policy under the CFR. But wouldn't we be creating a circuit split with Gibson if we adopted that analysis? I think the circuit split's already there when you see that with Downing. Downing's already in the camp of saying 28 U.S.C. 1331 is the only one that applies. And the 1st, 4th, and 11th circuits have declined to apply the jurisdiction under 42 U.S.C. 4072. Now, you could join into the camp, but where I think that logic breaks down is it's in conflict with camp. I think it's in conflict with Marseilles. If you now say that because you're a WYUO carrier, as a private entity, you now have sovereign immunity, how do you reconcile that with the sovereign being sued for procurement claims? Other strange things can also happen under that circumstance. Any registered insurer can participate in the program. What if you're a British Lloyds company? Now we'd be extending sovereign immunity potentially to even a foreign company. It creates a weird situation when you try to make these private entities into governmental actors. They're entitled to protection. They get protection. But that protection is only through preemption, and since preemption is a contractual right, the protection they get is they get reimbursed by the federal government, correct? Correct, Your Honor. And the federal government doesn't want these claims to come in except within one year of whatever the triggering event is. So it's still protecting the federal government. It is, but it's the operative mechanism that I think is the key. Whereas one is a limited waiver of sovereign immunity through a condition of precedent, the other is by a contractual clause that's required to be in there, and that contractual clause is it is one year and is in federal court. Is there any way for the federal government to, if you were to prevail in this case, would they have any way to get out of reimbursing Lloyds? We don't have access to all the kind of what I call treaty agreements between the federal government and the WYO carrier. I couldn't answer that with regard to the details and that relationship between the parties. But what would end up happening is there is a reimbursement procedure. It first comes from the unearned premiums, and then when it goes beyond that, premiums can come in from the federal government or the U.S. Treasury to compensate for those claims. Doesn't that make a difference to this analysis? Because if, in essence, National Lloyds is sitting here as the U.S. government, then your arguments hold less weight. On the other hand, if they're sitting here and they have sort of an indemnity agreement with the government and they may or may not get indemnified, probably will, but might could not, then the notion that they're really the government sitting here seems to flitter away a bit. So I guess I think to me it makes perhaps a difference. It may not, but it potentially could. I couldn't definitively give you the details of that agreement, but what I can tell you is it's a reimbursement. So the check doesn't come from the U.S. Treasury. We don't get a U.S. Treasury check like you would with a tax refund. It comes from them first. Conceivably. It comes from what? National Lloyds. They have their own checking account, and that's where the check comes from. Now then, if there's a deficit in that account, if there's not enough, that's when they get reimbursed. So there is the potential that that could happen. Most of the time they do have to get reimbursed in some capacity. The limitations of what that reimbursement is or what defense is to it, I don't know for sure. I'm wondering, could the government take the position, hey, you paid a claim that was untimely, even if we ordered it or we sent it back to the district court and the district court ordered it, they turn it in and say, well, I'm sorry. The district court, the Fifth Circuit may have said this was ordered. We weren't parties to that. We think you paid an untimely claim. We ain't reimbursing you. Could that happen? Logically, it makes sense to me. Like I said, I haven't seen the written agreements. I'll ask them, then. Don't worry. And the reason I see that possibly happening is theoretically that could happen on a claim, not even in litigation. If they went out there and paid a claim without a proof of loss and without the administrator's approval, I think the government could very easily come back and say, you didn't comply with our regulations. That's coming out of your funds. That doesn't implicate 4072. That's why I asked it in the context of a lawsuit. Because your whole argument against this, you've got two. You've got the waiver argument, and then you've got the they ain't the sovereign argument. And so I'm exploring the they ain't the sovereign argument because if they essentially are standing in the shoes or they are the shoes or whatever the right analogy is, that's different than if it's sort of like a reinsurance or an indemnity where the reinsurer or the indemnity can come back after them and say, we don't agree. And I think that's an essential element of the argument, Your Honor, in that there is no doubt if this is a suit against FEMA, this is against the administrator, we're done. It's over. We don't even contest that. We don't contest that federal law applies. But what we're saying here is because they're not the sovereign, although they have protections, those protections are not the same as being the sovereign, and that's why it's not the exclusive jurisdiction. And I think you raised the excellent point of it is a two-step process there in terms of they pay and then you're reimbursed. What the limitations are on that reimbursement, I simply don't have those details for you. Now, going back to the original argument that was briefed, would it be fair to say that your argument boils down to you can't have a claim denied until you have a claim? Yes and no. And you've got to be real careful with the language for one reason. Claim in a regular insurance context is what we all know and mean. You file a claim and it gets denied. However, with regard to the Federal Flood Insurance Program, they define it a little bit differently. And this Court has consistently gone on and says until you file a proof of loss and you file that proof in a timely manner, in effect you really don't have a claim. You haven't proved it up. And that's what makes this program a little bit different. Well, I mean, there's insurance policies where you have to file it a certain way. And, I mean, I know Texas has said the thing about prejudice and all that kind of stuff, but they didn't have to. So there is certainly that notion does exist in insurance that until you have done X, you haven't triggered the insurer's obligation to respond that also has timeliness things and statutes that will punish the insurer for not responding and all that. And in this context especially, it can be very punitive. I mean, there's no dispute among the circuits when it says that if you fail to file a proof of loss, even if they've already denied it, you can't file suit, you don't have a claim. And that's really where all the cases until the one we have here today have kind of come down on the side of, that if we're going to hold that strict standard, there is no real claim until the proof of loss is filed, then a preemptive denial, a premature denial, really has no effect. And so when they deny that proof of loss, and by way of example, we could have accepted their proof of loss. They said, hey, if you want $3,000, sign this proof of loss and it will be fine. Claim's over. In order to present our claim, we had to sign a proof of loss for the full amount, over $200,000. And when we did that, that's when the rejection came. Well, I think this has a lot of practical implications because when there's a major disaster, which usually is what precipitates these flood insurance claims, people are kind of running around. You're just trying to live somewhere. You're trying to see, you know, what are you going to do? Your house is demolished, you know, whatever, whatever. And being able to file some meaningful claim can be very difficult at that juncture. If they just run down the street saying we'll pay you $3,000, pay you $4,000, and that's the end of the matter, you're really at a disadvantage there because you haven't even had a chance to find anybody who can help you to even, you know, get your kids back in school and to just even breathe in a circumstance like that. So I think that's why you all were given or your clients were given the extra time to file. And I think it protects both sides. On the one hand, the government knows, or at least the WYO carrier both know, exactly what you're claiming for for the full amount so it's not just a continuing, ongoing process. And then you bring up excellent considerations because it is a burden upon them, especially when they're trying to get their lives back in order. I'm out of time, Your Honor. Thank you very much. May it please the Court. There are two reasons why, two different arguments to support one issue. This case brought by Mr. Aclossie is time barred. That issue of limitations and time barring of this suit was raised in the court below. It is the basis of Judge Rosenthal's opinion that's come to you, and it is based upon one argument, and it is based upon the two letters and the dates of the letters and the proper interpretation of the Cater case and that whole avenue that we can talk about. There is a second argument that has been highlighted by the court in the request for letter briefing, which is that there is exclusive original jurisdiction that rests in the federal court, and this case did not land in the federal district court until more than one year after even the later of the two letters. Once that issue is there of limitations, arguments can be reformulated. In fact, under ye versus city of Escondido, there can be a completely new argument brought up at the appellate level as long as it is consistent with an issue properly raised by the pleadings and the motions in the trial court. That is exactly what we have here. We have the issue of limitations, time barring this suit. On one argument, the Cater analysis. On the other argument, an understanding of the exclusive and original jurisdiction. Now, to deal with exclusive and original jurisdiction and to try to address the court's questions on that that I heard a moment ago, this circuit took Gibson in the right case and brought this analysis in and has consistently maintained that 4072 governs a write-your-own-carrier lawsuit and that 4072 gives exclusive original jurisdiction to the district court in which the property is located. That is what the statute says. Well, it says the director or the administrator. I think the current version is administrator. You all are not the administrator. We are not, but we operate in the place of the administrator as a write-your-own-carrier. Well, can you answer the question of if we were to go the other way, rule in favor of your opponent, and then the judge enters judgment for $200,000, let's say that, could the government say, oh, man, no, you paid an untimely claim. We ain't reimbursing you. The only way the government can do that is if national lawyers to write-your-own-carrier violated the litigation handling guidelines, which they have not done. I can represent to the court I'm dealing with a FEMA case manager before I come and stand before you today that I'm interacting with. The write-your-own-carrier stands in the shoes of the federal government. There is no way around that. Certainly, if they get outside the parameters of what they're supposed to do with regard to FEMA, they can run into a problem with FEMA, FEMA going, as counsel said and as the court has recognized, you paid one without a proof of loss. That violates our rules. We don't have to reimburse you for that. Certainly, there is accountability to FEMA to follow their rules. This is a strict compliance world for the write-your-own. If we were to rule that the claim was timely, then you're saying even if the federal government disagrees with that ruling, they would treat it as if they were bound by it? Absolutely, they have to. We are before Judge Rosenthal defending a write-your-own, working with FEMA to defend. We go in with the position that we took. The federal district judge agrees with us. What if he had disagreed? We're still there on FEMA's nickel, still being reimbursed by FEMA. In that regard, I would respectfully submit if they took a different course, we would have bigger problems with them not recognizing the authority of this court to impose its will upon them. I think it would be a different issue. From the write-your-own perspective, you come in on behalf of the federal government. You have already collected your premium. You've paid the premium over to the federal government, having kept out what you're entitled to keep out for your compensation for having placed a policy, reimbursement of expenses, and so forth. You're then reimbursed by FEMA for your claims handling expenses. You're then reimbursed by FEMA for every check that you write for claims payments. All of this is federal money. Even if this court reverses and sends back and Judge Rosenthal ultimately says, yes, Mr. Klauski's entitled to money, that's federal government money. Now, with regard to the write-your-own carrier, there is a body of case law there, and I know the court is familiar with the Downey case, but the prevailing case law among the circuits, we have the Third, we have the Sixth, we have this circuit, that if you're going to sue a write-your-own, you have exclusive original jurisdiction in the federal district court. That is what this circuit has said. That is the prevailing law. Have we ever addressed it as an actual issue, or has it just been a statement in passing as we have our little section on jurisdiction? I'm not saying that makes it irrelevant. I'm just asking whether we've actually ever addressed this issue directly, like that the state courts don't have jurisdiction over national loits in a case like this. I think that you have in the context of everything except the procurement. If there is misrepresentation or some sort of a tort claim from the procurement of the flood policy, then that is not exclusive to the federal district court, but everything else is. Anything related to claims handling against a write-your-own goes to federal court. So I do think that that is what write stands for, and I think that tracks Gibson. Yeah, except I looked at all the citations in our court of Gibson, but they all have to do with this preemption of these other claim kind of situations. They don't have to do with which court hears this, and they don't have to do with the limitations. That's key. I mean, they didn't address the exact question here, which is if you filed in state court, and then the insurance company removed to federal court, which date counts, the date of the state court filing or the date of the federal court removal? Well, but I believe that there is a case that specifically deals with the issue of the permissive, the equitable tolling during the time of pre-removal before it gets there. And I thought that was Gibson. I can relook at that. Yeah, but Gibson is a Sixth Circuit case. So, I mean, I respect the Sixth Circuit and know several of their judges. It's a terrific circuit. It's not binding on us, though. That's what I'm saying. In the cases of the – maybe I should be clear. Our refers to the Fifth Circuit. I don't mean our or the world, okay? Our circuit, the Fifth Circuit, has cited Gibson not in the context of statute of limitations. I'm asking, did I get that wrong? Is there, in fact, a statute of limitations? Is there, in fact, a case where we've done anything more than in the jurisdiction section say we have jurisdiction under 4072 and moved on anywhere where we've said the state court didn't have jurisdiction or where that's come up and mattered? I think the only place where we really see that is in Wright, and that was preceded by a federal district court opinion in Bearfield prognosticating what this court would do. And, in fact, this court did that by adopting Gibson and setting up exclusive original jurisdiction in the federal district court. We then see in Ferraro v. Liberty Mutual in 2015, this court coming in with strict compliance with 4072 as a method of handling these cases. We have Grissom v. Liberty Mutual, Fifth Circuit in 2012, that affirms the Wright opinion and the bringing in of Gibson and states that 4072 governs all claims related to claims handling. We have construction funding versus Fidelity National, Fifth Circuit 2016, which does discuss the exclusive jurisdiction under 4072. So I do think we have a body of law developing in the Fifth Circuit that 4072 does grant. But Ferraro just says, that's the one sentence I was referring to, the district court had jurisdiction pursuant to 42 U.S.C. 4072, which provides exclusive federal jurisdiction over litigation arising out of the NFIP. That may be enough to get you where you're trying to go, I'm not going to argue that point, but it's not addressing that in the context of the state court doesn't have jurisdiction or if you filed in state court, it was removed, we only consider the time filed in federal. I mean, it was simply making a statement like we always do, because if we don't have jurisdiction, we shouldn't be here. We have jurisdiction, now let's talk. And we went off on something else. Again, that may be enough. I'm not going to debate that with you. I'm just saying, is that all we have, that kind of statement? Because the cases that I looked at, that's all I saw. Those are it, ma'am. I mean, there is not a great body of case law in the Fifth Circuit on this, which was somewhat surprising going in to look at it when you consider where we're geographically located. I would have thought that we would have had more litigation that might have come to you all on that topic related to these flood policies. But no, we don't have. Hopefully the WIOs are paying. We have had actually a lot of litigation, it just hasn't been on this. It's been more on the substance of whether it's the flood or the wind. We have had a lot of flood and wind cases out of Katrina and subsequent. But I do think that if this circuit is going to follow the prevailing circuits, then it will, and frankly the analysis you have of 4072 already, what you do have in right, that when you look specifically at things related to procurement, okay, this isn't claims handling. This is an insurance company doing its job to go try to sell a policy. It's got accountability for that wherever there's accountability for that. But once you get over into the claims handling world, you're now coming to federal court, the federal preemption applies, 4072 applies, and we're here. I do think that that reasoning leads you to you're here for a right your own. You're here on behalf of the federal government. You're in federal court. You're dealing with federal dollars. You're saying if the lawsuit was the Aclossie family saying you lied to us about what would be covered to get us to buy this policy, then that could go to state court. I think so. I think under the prevailing law in this circuit, yes, if that's the only claim. If they're going to say the flood policy covered what it covered and it didn't cover what you said it would and we're now suing you for fraud in the procurement, I think under the law of the Fifth Circuit that can stay. I think that gets remanded back to the state district court and gets dealt with as a state law fraud claim. But I think that 4072 has set up this process because it is federal money that brings us to federal court and it brings us here within one year of the date of a denial or partial denial of your claim, and as that applies to the Aclossie case, that did not happen. We didn't get here until 15 months after arguably the later of those dates. Without even considering which of these two letters should apply. Do you want to argue that on the letters? Because I'm having a lot of trouble understanding the argument that I can have a denial of a claim when I don't have a claim. I did a lot of insurance work as a lawyer, so not this kind of insurance but a lot of insurance, and I just don't remember saying, oh, yeah, your claim can be denied when you don't have a claim. But you have a claim. The insured has a claim, and they file their claim. Now, there are certain components that have to be met, certain activities that have to be done. And they didn't do that until later within the time frame given by the extension, and then there was a denial. Why isn't that the denial of a claim if we're looking at statutory construction of what claim means? Claim means not just I called up and go, oh, my God, my house is a wreck. It's the filing process, because you wouldn't have had to do squat if that's all I did is call up and say my house has been demolished by a flood. But in every instance that I can locate until the Cater opinion and its progeny, that is exactly what has happened. Cater is the first instance we can find where a district court has said we're going to now separate things and you don't have a claim until you have filed a proof of loss. Cater was dealing with a specific factual situation, and then you follow it with Willis, with Altman, with M&K, with Kroll, with Lindblad. Not until you get to Lindblad does a district court actually look at Cater and do what Judge Rosenthal did, distinguish it on the basis of its factual scenario. For the first time you had FEMA, exactly what the court pointed out a moment ago. You've had the catastrophic event happen. You've got to get your kids in school. What are you going to do? How are you going to get a proof of loss filed inside of 60 days? So FEMA steps up and says, you know what, we're going to give you a year to get your proof of loss on file. Well, in that moment FEMA, on behalf of the federal government, dealing with the limitations of when the federal government wants to be sued, FEMA says your prerequisite to suit, your proof of loss, can now get filed a year out. But your denial can be here, and arguably the statute of limitations can run before the deadline for your proof. But your denial can be before there's any proof. So in these cases, we had this in Ike, too. I'm trying to remember which hurricane. There was a lot of debate about was it? There's no debate the house is demolished. Everybody can stand there and look at it. We don't need an expert. But there was a lot of debate about whether that was because of wind, which wouldn't be covered under flood insurance, just under regular homeowner, or flood, which would be covered under flood and not regular homeowner. The debate was often between the two carriers. Your point seems to make the proof of loss irrelevant. So while I'm sitting around trying to find a hotel to live in, put kids in school and all of that, I'm getting a claim denied that I haven't had a chance to put together. I haven't had a chance to have experts come out there and say, no, this shows that it was flooding, or no, this shows that it was wind, or no, this shows that it was something else. And yet you're allowed to deny it, start my clock running, when I haven't even had the opportunity to get any experts to come in and help me make the right claim. Assuming I'm going to be a person of integrity and want to go after the correct insurer for whatever, but I'm just a person. I have no idea what caused my house to be demolished. I just want my house back. I need to go on living. That just makes no sense at all to me, that you can deny a claim I haven't even made and even had an opportunity to make when you've extended the time, when FEMA's expended the time for me to make the claim. It just assumes that I'm going to file something that's meaningless. But respectfully, ma'am. And that won't change your mind. But respectfully, the proof of loss isn't the filing of the claim. The filing of the claim is the filing of the claim. But what did they file? I mean, how can I file something that is something you're allowed to ignore by law? By law, if I just call up or I write a letter and I say, my house is demolished and it looks awfully wet, I think it was a flood, you guys could just ignore that, absolutely. You wouldn't even have to respond until I did the proper things to make it a proof of loss, swore to it and whatever else. So how can you treat that as a claim when you could, as an insurer, ignore it? And you're not allowed to ignore claims as an insurer. You have all kinds of rules about dealing with them and timeliness and all of that. But if it is ignored by the carrier until the proof of loss, then the letter that denies the claim starts a date running out here after the proof of loss is filed. Right, but I'm saying when we're trying to interpret the word claim and we're trying to do it consistent with this scheme that favors you all a lot but needs to do what it's supposed to do, which is protect people from disastrous floods, we can't give them a complete catch-22. You're really essentially saying the insurance company can walk down the street and go $3,000, $4,000, $5,000 and write letters and all these claims are denied and the people are still sitting there in a hotel somewhere trying to figure out where the next meal's going to come from. That, to me, makes no sense if we're looking at statutory interpretation. But, ma'am, the statutory interpretation is what is a claim. It is tendering to your carrier a request for payment of proceeds you're entitled to receive under your contract. Once you make the carrier aware... You're not entitled to receive them under your contract until you've filed a proof of loss. That is correct. But that can't be a claim. That's what I'm saying. In this case, Mr. Aclossie had a claim. National Lloyd's had an adjuster go look at the claim and they said, here's what's covered and here's what's not. How did that get triggered? Was it just the event? Was there a phone call? Was there a document? It was a claim turned into the insurance company by the insurer. Show me in the record what that looks like. I don't have the record side in front of me and I apologize. But the claim comes into the insurance company. They send an adjuster out. They adjust the claim. They determine that this is covered and this is not. They send a partial denial on the uncovered portion and they send a letter that says, send us your proof of loss and as soon as we get it, we'll tender payment to you. That fits directly in the statute. That ignores the concept that perhaps when I've had time to put a proof of loss together, I might could persuade you that this was caused by the flood. Because, again, a lot of these disputes aren't really, I don't think 200,000 versus 3,000 is just some expert talking about how the repairs are done. I've seen that. But that strikes me as was it flood or wind or something else. What part of that do you owe? And respectfully, ma'am, in this case, we had AAA, the auto club as a defendant and national law. We had the wind and the flood carrier there. But in that scenario, Mr. Klossy, even if he got his proof of loss in in January, I think it was, following the date of loss, he files his proof of loss. There is a letter that comes. His statute of limitations, we look at it under what we think the statute is, the claim being when the claim, the request for payment was turned in to the carrier, and there is a denial or partial denial, which is October. He had until October of that year to file his lawsuit, and he waited until the following January. We do think there is a provision, there is a timeline there for the insured to be able to file their lawsuit if they choose to. Counsel, you've been repeatedly relying on the right case. I've looked through the briefs. I don't see it cited. That doesn't mean I'm reading correctly. Give me the cite to write. 415 F. 3rd, 384, Fifth Circuit, 2005. All right. And my other question is, you began your argument by saying that you raised limitations below. You just raised it on one prong instead of another prong, as if that means you can raise the second prong here, that it's not waived. What's another basis for your claiming that even if normally we would apply waiver and say, well, you didn't present this below, if we assume it's not jurisdictional, if we assume it's just limitations, what would be your other basis for saying, well, I didn't argue it below, but you ought to consider it now because. What would your basis be? Because it is a second viable argument that applies to the exact same issue. If you look at the Yee versus City of Escondido case, which is U.S. Supreme Court, 112, Supreme Court, 1522, 1992. Once a federal claim.  Yes, sir. All right. No party can make any argument in support of that claim. Parties are not limited to the precise arguments made below. In that specific instance, it was over a city ordinance, a takings ordinance, and the court held that taking in that case was argued to have occurred in two different ways, physical occupation and regulation, two different ones, one raised below and one raised above, but they're both different variations of the same. They didn't even raise it above. We raised it. Does that make a difference? I don't think so, ma'am. I don't think so. I sure hope not, sir. All right, counsel. Thank you. One of the linchpins of the argument is the idea that a private entity is the effect of the sovereign. 44 CFR 6233 Section G prohibits exactly that type of an argument. A write-your-own company shall act as a fiscal agent of the federal government but not as its general agent. In other words, it's not the same. Write-your-own companies are sole. What is the difference between a fiscal agent and a general agent as it applies to this lawsuit? A fiscal agent, as it does here, can make its own decisions, its own policy and procedures apply. It's paying with its own funds. The difference is it can be reimbursed. And, in fact, it's explained in the next section. Write-your-own companies are solely responsible for their obligations to the insured under any flood insurance policy issued under agreements entered into with the federal insurance administrator, such that the federal government is not a proper party defendant in any lawsuit arising out of such policies. But what they're asking you to do is, although you're suing the WIO, we want you to treat it as the administrator. We want you to, in fact, substitute their name in. Let's don't call it National Lloyd's. Let's call it the administrator. Let's call it FEMA. But why do we even have 4072 if FEMA can't be a party in these WIO cases? Two different programs. The direct insurance versus the WIO? Exactly. And that's why they had to enable it through there. I think initially when it was implemented— I couldn't understand your last statement. Sure. When the program was implemented in the 70s, there was actually a program where it didn't even use Treasury funds, but it didn't work out. It didn't use what? Treasury funds. Sorry, I did it. I apologize, Your Honor. And so they had two sections, an A and a B section, one which was completely privatized, one which is what you have now today where you're using Treasury funds. The Write Your Own program came into the 80s after the private program didn't work out. And so what they said is you administer the policies, you sell the policies, you use your own policies and procedures, all these different things that go about. You may get reimbursed, but you pay the bills. And I think that's an important aspect of it. When this Court decided it can't and then affirmed it in Marseilles, it said this is a very limited preemption. Those reimbursements only apply in the context of adjusting. If it was truly the sovereign, you couldn't have procurement claims. And by his own admission, a claim not against the sovereign is proper in state court. And so whether there's waiver or not, if it's simply plain federal question jurisdiction under 28 U.S.C. 1331, the claim is properly filed in state court but with an absolute right of removal. That's what happened here. We sued not only the WIO carrier. We had to sue an in-state defendant, an insurance company that had the wind insurance on the property, and we sued both of them there. They removed it. Their choice. They didn't seek to dismiss it. They didn't seek any other means or mechanisms. But the key to it is, and where all these cases come down, is if you file it blatantly in a wrong court. If you sued FEMA in state court, I agree. 4072 applies. But it doesn't apply here and not when a party decides rather than to seek a dismissal but to seek removal, not when a party doesn't plead it, not when a party doesn't reference it anywhere in the underlying documents, but only hopes to have it bailed out on appeal. I agree. Subject matters jurisdiction is always a ripe topic. This court needs to decide that. But once 4072 doesn't apply, it's no longer proper. There's no question about jurisdiction at this point because you can remove even an exclusive jurisdiction case to federal court. Nobody is debating the federal court. So we're not having a jurisdiction question today. The only question is how the potential jurisdictional question intersects with this limitations question in terms of when was the lawsuit, quote, filed for purposes of ending the statute of limitations running. And that's a much better way to phrase it, Your Honor. And I think that's the point. Under 28 U.S.C., every court's ruled that there is federal question because the federal funds are implicated. So even though they're not the sovereign, they still get the preemption. They still can remove it to federal court unequivocally. No one disputes that. The difference being jurisdiction can't be waived. Jurisdiction can't be conferred by an agreement, by a simple choice of form clause. That would be what's ripe here today if we're going under 4072. Under 28 U.S.C. 1331, it's permissive removal. But under either one, we have jurisdiction today. Yes, Your Honor. But what's important is we couldn't waive it otherwise. Or in this situation, they could have proceeded in state court. If for some strategy reason they wanted to pursue those claims there, they could have. My time is up. Thank you. Thank you. Thank you both. We'll take a brief recess before the next argument.